Filed 12/17/20  P. v. Lathan CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RICHARD LATHAN, <br><br> Defendant and Appellant. | B299515 <br><br> (Los Angeles County <br> Super. Ct. No. BA045268) |

APPEAL from an order of the Superior Court of the County of Los Angeles, James R. Dabney.  Affirmed.

Janet Uson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

## I.    INTRODUCTION

Defendant Richard Lathan appeals from the trial court's denial of his Senate Bill No. 1437 (Senate Bill 1437) and Penal Code section 1170.95[1] petition for resentencing.  We affirm.

## II.    FACTUAL BACKGROUND

"At the time of the crimes, [G.T.], Veronica Perez, and their children were visiting [I.M.], [A.P.], and their children.  At some point in the evening, [I.M.] and [G.T.] were sitting in [I.M.]'s car, parked near the front door to the house.  [I.M.] was in the passenger seat, [G.T.] in the driver's seat.  The driver's side door was open.  [Defendant] and another man approached them.

"[Defendant] shot [G.T.] twice, in the stomach and in the chest.  The other man shot [I.M.] twice.  [G.T.] ran into the house and fell on the couch.  [Defendant] continued to shoot at [G.T.] as he ran.

"[A.P.] was inside the house when she heard six or seven shots fired.  She ran to the front door and saw two men.  She could not tell if both . . . were shooting, but she heard rapid gunshots when she saw them both there.  The men turned and appeared to see her, so she stepped back into the house.  The shooters got as close as the front door jamb, so that they could see Veronica Perez inside the house, in the living room.  When the shots stopped, Veronica [Perez] said 'They shot me too,' and fell.  Veronica Perez was killed by a gunshot wound.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

"Two bullets were recovered at the scene. One of them was found inside the house, in front of the couch, and the other outside, two or three feet from the rear of [I.M.]'s car. Those bullets were fired from the same gun. A bullet recovered at the hospital where [G.T.] was taken after the shooting was shot from another gun.

"[I.M.] identified the [codefendant] in this case as the man who shot him. However, the jury could not reach a verdict on the charges against the [codefendant] and the court declared a mistrial on those charges." (*People v. Lathan* (Oct. 21, 1993, B070970) [nonpub. opn.].)

The jury found defendant guilty of the second degree murder of Veronica Perez and the attempted premeditated murders of G.T. and I.M. The jury also found true the allegation that defendant personally used a firearm in the commission of the murder. (*People v. Lathan, supra*, B070970.)

At a later retrial, the codefendant was convicted of the second degree murder of Veronica Perez and the attempted premeditated murder of I.M. The jury found true an allegation that the codefendant had personally used a firearm in the commission of both crimes (§ 12022.5, subd. (a)). (*People v. Elliotte* (Mar. 6, 1995, B078292) [nonpub. opn.].)

### III. PROCEDURAL BACKGROUND

On March 7, 2019, defendant filed his petition for resentencing pursuant to Senate Bill 1437.[2] Defendant

---

[2] Although defendant stated that he made his motion pursuant to section 1170, subdivision (d)(1), we will treat his motion as one made pursuant to section 1170.95.

contended that he was eligible for resentencing because the jury did not find that he acted with premeditation and deliberation, there was no proof that he had the intent "to kill anyone under the natural and probable consequences [theory,]" and no proof that he "aided and abetted his [codefendant] in the second degree murder he stands convicted of under the old felony murder rule." Defendant requested the appointment of counsel.

On April 11, 2019, the District Attorney filed an opposition to the petition arguing that defendant was not entitled to resentencing because he had not been convicted of murder under either a felony murder or a natural and probable consequences theory of liability. The District Attorney also argued that Senate Bill 1437 was unconstitutional.

On April 12, 2019, the trial court denied the petition, finding "that the [defendant] has failed to allege any facts that would entitle him to relief under section 1170.95." The court further concluded that it did not need to address whether the statute was constitutional.

## III.   DISCUSSION

A.    *Senate Bill 1437 and Section 1170.95*

"Through section 1170.95, Senate Bill 1437 created a petitioning process by which a defendant convicted of murder under a felony murder theory of liability [or the natural and probable consequences doctrine] could petition to have his conviction vacated and be resentenced. Section 1170.95 initially requires a court to determine whether a petitioner has made a prima facie showing that he or she falls within the provisions of

the statute as set forth in subdivision (a), including that '(1) [a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[,] [¶] (2) [t]he petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[, and] [¶] (3) [t]he petitioner could not be convicted of first or second degree murder because of changes to [s]ection[s] 188 or 189 made effective January 1, 2019.' (See § 1170.95, subd. (c); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327 . . . , review granted Mar. 18, 2020, [S260493 (*Verdugo*)].) If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may deny the petition. (*Verdugo*, [*supra*, 44 Cal.App.5th] at p. 330.) If, however, a determination of eligibility requires an assessment of the evidence concerning the commission of the petitioner's offense, the trial court must appoint counsel and permit the filing of the submissions contemplated by section 1170.95. (*Verdugo, [supra*, 44 Cal.App.5th] at p. 332; [*People v.*] *Lewis* [(2020)] 43 Cal.App.5th [1128,] 1140, rev[iew] granted [Mar. 18, 2020, S260598 (*Lewis*)].)" (*People v. Smith* (2020) 49 Cal.App.5th 85, 92, fn. omitted, review granted July 22, 2020, S262835 (*Smith*).)

B.    *Analysis*

1.    Murder Conviction

Defendant contends that the trial court erred by summarily denying his petition on the murder conviction without first appointing counsel and allowing him to submit supplemental briefing.  We disagree.

The jury instructions in defendant's case did not include instructions on the felony murder rule or the natural and probable consequences doctrine.  The jury received instructions only on direct aiding and abetting[3] and the elements of malice murder.[4]  Defendant, however, contends that "[i]t was reasonable

---

3    The trial court delivered CALJIC No. 3.01, which stated, "A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she,  [¶]  (1) with knowledge of the unlawful purpose of the perpetrator and  [¶]  (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime.  [¶]  [A person who aids and abets the [commission] [or] [attempted commission] of a crime need not be personally present at the scene of the crime.]  [¶]  [Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting.]  [¶]  [Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.]"

4    The court delivered CALJIC No. 8.10, which stated, "[Defendant is accused in [Count 1 of] the information of having committed the crime of murder, a violation of . . . [s]ection 187.] [¶]  Every person who unlawfully kills a [human being] [with

6

for a jury to find that . . . [defendant] was liable as a natural and probable consequences of the initial shooting near the car." Defendant notes that in his initial appeal, he argued the trial court erred in failing to instruct the jury on the natural and probable consequences theory. But the fact that the jury was not instructed on this theory of murder defeats rather than supports defendant's claim that the court erred. (*Smith, supra*, 49 Cal.App.5th at p. 92, fn. 5 ["if the jury was not instructed on a natural and probable consequences or felony-murder theory of liability, the petitioner could not demonstrate eligibility as a matter of law because relief is restricted to persons convicted under one of those two theories"].) Because defendant could only have been convicted of murder as the shooter or a direct aider and abettor, and the jury necessarily found that he intended to kill the victim, defendant was ineligible, as a matter of law, for resentencing under section 1170.95. (*Verdugo, supra*, 44 Cal.App.5th at p. 330 [the record of conviction may establish that defendant "is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189"]; *Lewis, supra*, 43 Cal.App.5th at p. 1140 ["the trial court's duty to appoint counsel [under section 1170.95] does not arise unless and until the court makes the threshold

---

malice aforethought] is guilty of the crime of murder in violation of [s]ection 187. . . . [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A human being was killed. [¶] 2. The killing was unlawful, and [¶] 3. The killing [was done with malice aforethought]. [¶] [A killing is unlawful, if it [is] [neither] [justifiable] [nor] [excusable]."

7

determination that petitioner 'falls within the provisions' of the statute"].)

Defendant additionally contends that he had a constitutional right, under the Sixth Amendment and due process principles, to the appointment of counsel. We disagree. (See, e.g., *Smith, supra,* 49 Cal.App.5th at p. 92; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410; see also *Dillon v. United States* (2010) 560 U.S. 817, 828–829 [holding Sixth Amendment inapplicable to sentence modification proceedings]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 ["[T]he retroactive relief . . . afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis"]; *In re Clark* (1993) 5 Cal.4th 750, 780 [constitutional due process guarantees demand appointment of counsel in postconviction proceedings "if a petition . . . states a prima facie case leading to issuance of an order to show cause"].)

### 2. Attempted Murder Convictions

Defendant next contends the trial court erred by summarily denying his section 1170.95 petition on his attempted murder convictions. He acknowledges that courts are divided on the issue of whether section 1170.95 applies to attempted murder, but argues the cases holding that section 1170.95 does not apply to attempted murder[5] were wrongly decided.

---

[5]    In *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted November 13, 2019, S258175 (*Lopez*) and *People v. Munoz* (2019) 39 Cal.App.5th 738, review granted November 26, 2019, S258234 (*Munoz*), the courts held that defendants convicted of attempted murder under the natural and

8

In light of the express language of section 1170.95, we follow the decisions in *Lopez, supra*, 38 Cal.App.5th 1087 and *Munoz, supra*, 39 Cal.App.5th 738 and conclude that the trial court did not err by denying the petition on the attempted murder convictions because those convictions were based on offenses that were not eligible for relief under section 1170.95.

We also reject defendant's contention that the trial court's failure to construe section 1170.95 as applying to the offense of attempted murder violated his right to equal protection under the federal and California constitutions.  Our colleagues in Divisions Three and Seven have considered and rejected defendant's contention that construing section 1170.95 to exclude attempted murder violates equal protection principles.  (*Munoz, supra*, 39 Cal.App.5th at pp. 760–768; *Lopez, supra*, 38 Cal.App.5th at pp. 1107–1112.)  They held that persons convicted of attempted murder under the natural and probable consequences doctrine are not similarly situated to persons convicted of murder, and the Legislature had a rational basis for limiting Senate Bill 1437 to persons convicted of murder.  (*Munoz, supra*, 39 Cal.App.5th at pp. 760–768; *Lopez, supra*, 38 Cal.App.5th at pp. 1107–1112.)  We agree.

---

probable consequences doctrine are not eligible for section 1170.95 relief.

## IV. DISPOSITION

The order denying the resentencing petition under section 1170.95 is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.          MOOR, J.